**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

S.V.B. ASSOCIATES, INC. d/b/a )
SECURITY SYSTEMS OF AMERICA, )
 )
          Plaintiff, )
 )  2:19-cv-1575-RJC
     v. )
 )
ROBERT J. LOMB, JR., CLINTON )
MORRIS, individually and as President of )
Alarm Corp., and ALARM CORP., )
 )
          Defendants. )

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge.

      Presently pending before the Court is a Motion to Dismiss for Failure to State a Claim (ECF No. 9) filed on behalf of Defendant Robert J. Lomb, Jr. (hereinafter, "Defendant" or "Lomb"). For the reasons stated herein, the motion will be granted in part and denied in part.

## I. Procedural and Factual Background

      This action was filed on December 6, 2019 with the filing of the Complaint (ECF No. 1, "Compl."), and Defendant[1] filed the now-pending Motion to Dismiss with Brief in Support on January 13, 2020. (ECF Nos. 9, 10). Plaintiff S.V.B. Associates, Inc., d/b/a Security Systems of America, (hereinafter, "Plaintiff" or "SSA") has filed a Brief in Opposition thereto (ECF Nos. 14) to which Defendant has filed a Reply. (ECF No. 22). The matter is now ripe for disposition.

      We have jurisdiction pursuant to 28 U.S.C. §§ 1331.

---

[1]Defendants Clinton Morris, individually and as president of Alarm Corp., and Alarm Corp. have only recently been served. Defendant Alarm Corp. has failed to answer or otherwise respond to the complaint and default has been entered as to it. (ECF No. 36). Defendant Morris has sought to join the motion to dismiss, which we will permit.

Plaintiff alleges Lomb, a terminated employee and former Director of Operations, stole and converted for his own use the domain of SSA, allowing him to exercise complete control of SSA's domain and the ability to interfere with the company's website and corporate emails. SSA has alleged eight separate Counts in the Complaint.  First, it alleges Lomb violated the Defend Trade Secrets Act, 18 U.S.C. § 1832(a) (Count I), the Pennsylvania  Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 et seq. (Count II),  as well as the common law causes of action of civil conspiracy (Count III), breach  of contract (Count IV), conversion (Count V), breach of fiduciary duty of loyalty (Count VI),  tortious interference with contracts (Count VII), and unjust enrichment (Count VIII).  The pending motion seeks dismissal of all common law causes of action, namely Counts Three through Eight, on  various grounds, including that  they are barred by the gist of the action doctrine and fail to allege certain  elements of those causes of action, including, inter alia, lack of malice and  actual damages.

The allegations in the complaint are as follows. The Plaintiff, S.V.B. Associates, Inc., has been incorporated since December 18, 1972, and has been doing business as Security Systems of America since January 1973. (Compl. ¶ 7). SSA is in the business of designing, installing and monitoring equipment and providing customized security solutions for homes and businesses. (Compl. ¶ 7). In or about January of 2018, SSA decided that it needed to hire either a Vice President or a Director of Operations due to serious health issues of Brice Beaver, the President of SSA. (Compl. ¶ 11).  Following interviews of several candidates, SSA hired Lomb as its Director of Operations to oversee SSA's Service Department and Installation Department. (Compl. ¶ 15). In that regard, on or about June 29, 2018, Lomb presented SSA's President, Brice Beaver, with a proposed Employment Contract (which was prepared by Lomb's counsel and which Lomb had already signed).  (Compl. ¶ 16). On or about July 5, 2018, Lomb and Beaver

agreed to make several changes to the proposed contract. (Compl. ¶ 18). On that date Beaver, on

behalf of SSA, signed the Employment Contract, as amended. (Compl. ¶ 18). On August 1,

2018, under the terms of the Employment Contract, Lomb commenced permanent, full-time

employment with SSA as the Director of Operations. (Compl. ¶ 19).

## SSA's Domain

On February 11, 1999, SSA registered its current domain (ssasecurity.com) and

maintained an uninterrupted right to use the domain name for 20 years. (Compl. ¶ 20). The use of

SSA's domain over two decades has become an important part of the Company's identity,

branding and public face on its website. (Compl. ¶ 20). SSA's domain also includes its corporate

email. (Compl. ¶ 20). Since 2002, SSA has used Names4ever as its Domain Name Registrar.

(Compl. ¶ 21). In February 2018, SSA renewed its domain with a payment to Names4ever.

(Compl. ¶ 21). On February 11, 2019, SSA again paid Names4ever for the renewal of its domain

for nine more years, giving SSA exclusive rights to use the domain until February 2028. (Compl.

¶ 22).

On or about February 22, 2019, without the knowledge, consent or authority of SSA's

officers, Lomb, who knew about the renewal of the domain, transferred SSA's domain from the

previous Domain Names Registrar, Names4ever, to a new Domain Names Registrar,

GoDaddy.com, LLC ("GoDaddy"). (Compl. ¶ 24). Further, Lomb transferred the ownership and

control of SSA's domain from SSA to himself. Lomb made a personal payment to effectuate the

transfer; in so doing, Lomb purportedly acquired ownership and exercised sole control of the

Company's domain. (Compl. ¶ 24). Lomb secretly and impermissibly converted SSA's domain

and locked out SSA: (a) by naming himself as the account holder at GoDaddy; and, (b) by

intentionally not naming any SSA officer or employee to the new GoDaddy account as an

authorized user. (Compl. ¶ 24). Lomb created new log in information at GoDaddy for his exclusive access, use and control of SSA's domain (to the exclusion of SSA). (Compl. ¶25). By doing so, Lomb gained sole control of SSA's domain, which is used for the Company's website and corporate email. (Compl. ¶ 25).

After Lomb's unauthorized transfer of SSA's domain from the Company to himself, he did not seek reimbursement from SSA for his personal expense, knowing that such a request for reimbursement would expose his actions to SSA's officers, which in turn would prevent Lomb from having singular control and ownership of SSA's domain and the GoDaddy account. (Compl. ¶ 26). Consequently, by transferring ownership and creating a new account and log in information for the Company's domain at GoDaddy, which account information Lomb did not disclose to anyone at SSA, Lomb had, and currently has, complete control of SSA's domain, and the ability to interfere with the Company's website and corporate emails. (Compl. ¶ 27). Thus, through the unauthorized transfer of SSA's domain, it is alleged Lomb converted and misappropriated SSA's exclusive rights for the Company's domain until February 11, 2029. (Compl. ¶ 28).

### Employment Contract

Attached to the Complaint is the Employment Contract entered into between Lomb and SSA, dated June 29, 2018.  (ECF No. 1-2, Compl. Ex. 1, hereinafter "Employment Contract").

Paragraph 39 of the Employment Contract regarding "Contract Binding/Authority" provides:

> Notwithstanding any other term or condition express or implied in this Agreement to the contrary, the Employee [Lomb] will not have the authority to enter into any contracts or commitments for or on behalf of the Employer [SSA] ***without first obtaining the express written consent of the Employer.***

(Employment Contract ¶ 39; Compl. ¶ 29) (emphasis added).  Lomb did not first obtain express written consent from Brice Beaver, President of SSA, to terminate the recently renewed contract or commitment with Names4ever, or to enter into a contract or commitment with GoDaddy. (Compl. ¶¶ 30, 31).  SSA further alleges that Lomb did not have any authority to transfer the ownership and control of SSA's domain to himself, or lock SSA from its own domain, a right SSA has held since February 1999 until February 11, 2028, given its recent nine-year renewal. (Compl.  ¶33). SSA alleges Lomb knowingly and intentionally failed to notify SSA's officers about his transfer of the ownership and control of the domain from SSA to himself, and further, knowingly and intentionally withheld vital information from SSA, such as the GoDaddy user name, password, account number, and account holder's name and billing information.  (Compl. ¶ 35).

On July 22, 2019, SSA terminated Lomb's employment.[2] (Compl.  ¶ 37).  At the time of his termination, Brice Beaver asked Lomb to provide any and all passwords that Lomb used, or of which he had knowledge, as SSA's Director of Operations. (Compl.  ¶ 38).  Lomb provided certain passwords throughout the next week, but did not provide the password and other account information for SSA's domain that had been transferred by Lomb to GoDaddy in February 2019. (Compl.  ¶ 39).

Pursuant to the Employment Contract, SSA paid Lomb the sum of $14,423.08 as a severance, which was equal to six weeks of compensation for the nearly one year that Lomb was employed by SSA. (Compl.  ¶ 41). He was unhappy to receive only the agreed upon amount. (Compl.  ¶ 42). On August 8, 2019, Lomb's counsel sent a demand letter to SSA's officers and opined, among other things, that SSA had breached the Employment Contract and, accordingly,

---

[2] The Complaint does not allege the reason for the termination.

"…has intentionally and knowingly relinquished any rights to restrict Mr. Lomb's use of information he may have gained and possesses with respect to SSA's customers, clients, databases, process, employees or otherwise." (Compl. ¶ 43).

The Employment Contract defines "Confidential Information" (Paragraphs 25 through 27) as well as what is not Confidential Information (Paragraphs 28 and 29). (Compl. ¶ 44).

> The Confidential Information will include all data and information relating to the business and management of the Employer, including but not limited to, proprietary and trade secret technology and accounting records to which access is obtained by the Employee, including Work Product, Computer Software, Other Proprietary Data, Business Operations, Marketing and Development Operations, and Customer Information.

Employment Contract ¶ 26.

Paragraph 31 of the Employment Contract states:

> the Employee agrees and acknowledges that the Confidential information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of the Agreement cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to Employer, would gravely affect the effective and successful conduct of the Employer's business and goodwill, and would be a material breach of this Agreement.

(Compl. ¶ 47, Employment Contract ¶ 31).

Further, the Employment Contract (Paragraphs 35 through 37) expressly describes "Ownership and Title to Confidential Information." (Compl. ¶ 45). As set forth in Paragraph 35:

> the Employee [Lomb] acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of the Employer [SSA]. Accordingly, the Employee specifically agrees and acknowledges that the Employee will have no interest in the Confidential Information.

(Compl. ¶ 45). Paragraph 38 sets forth Lomb's obligations to turn over to SSA all Confidential Information that was in his possession upon termination of his employment.

6

In addition to SSA's exclusive ownership of Confidential Information, the Employment Contract sets forth "Duties and Obligations concerning Confidential Information."  It provides: "The Employee [Lomb] agrees that a material term of the Employee's contract with the Employer is to keep all Confidential Information absolutely confidential and protect its release from the public." (Id.  at ¶ 30.) (Compl.  ¶ 46).

### Defendants Clinton Morris and Alarm Corp.

On October 11, 2019, several months after the termination of Lomb's employment, Brice Beaver, and his father, Art Beaver, became aware that Lomb was in possession of SSA's complete customer list and other Confidential Information.  Specifically, Defendant Clinton Morris, who identified himself as President of Defendant Alarm Corp., sent an email to Brice Beaver and Art Beaver "informing" them that "we have been engaged by a client [later identified therein as Robert Lomb] to broker the sale of qualified leads that prior to 7/22/2019 were the exclusive property of S.V.B. Associates, Inc., d/b/a/ Security Systems of America (SSA)." (Compl.  ¶ 48).  This email is attached to the Complaint as Exhibit 2.  (ECF No. 1-3).

SSA further alleges that: the website of Alarm Corp. was created three weeks before Morris contacted SSA; it is fraudulent, misleading, and intended to misrepresent its credentials; the address listed on its website refers to a vacant location in Alexandria, Virginia; and  the property manager at that location has never heard of Clinton Morris or Alarm Corp. (Compl.  ¶ 50-52).

Broadly speaking, plaintiff alleges that Lomb and Morris have taken nearly all of SSA's trade secrets and Confidential Information regarding thousands of SSA's customers and have

threatened to sell such information at auction to the highest bidder.  (Compl.  ¶ 58).  The October

11, 2019 email continues:

> [W]e are internally vetting the client [Lomb] and their current position related to
> their rights to sell the information, and have been instructed by them to contact
> you as part of the next step in our process.  As part of our due diligence, we are
> providing notice to allow you time to forward any additional information that
> would enforce exclusive rights to the information on behalf of SSA; please
> provide supporting information within 3 business days of the date of this
> correspondence.

(Compl.  ¶ 53).  Morris summarized the "data proposed for auction" to SSA's competitors

(namely "11,000+ active accounts") to include monitoring, billing, contract status, contract end

date, and cumulative service information, as well as other qualified lead information.  (Compl.

¶¶ 54, 55).

## II.  Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In

deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-

pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.

*U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not

need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must

provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a

right to relief above the speculative level" and "sufficient to state a claim for relief that is

plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr, Corp.*, 809 F.3d 780 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

809 F.3d at 876-77. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (internal citations omitted)

While a District Court is generally limited to a plaintiff's complaint in assessing a motion to dismiss, when a document is "integral to or explicitly relied upon in the complaint [, it] may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted).

### III.  Discussion

As noted infra, Lomb's motion to dismiss, which defendant Morris has requested to join, seeks dismissal of Counts Three through Eight of the Complaint.

### A.  Count IV:  Breach of Contract (alleged as to Defendant Lomb only)

At Count IV Plaintiff alleges breach of contract as to Defendant Lomb.  Defendant Lomb argues this count, to the extent it is based upon confidential information, is barred under the doctrines of failure of condition precedent/waiver/release. Under Pennsylvania law, the elements of breach of an express contract are: "1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

Paragraph 43 of the Employment Contract provides, among other things, for the calculation of Lomb's severance; it was under this provision that SSA paid Lomb upon the termination of his employment.  It states:

> Where the Employer has breached any term of this Agreement, or where the Employer has terminated the Employee without reasonable cause to do so or terminated the Employee in contravention of any applicable employment law, Employee shall be entitled to receive a severance, which shall be equal to six weeks of Compensation for each year the Employee has been employed under this Agreement.  In calculating years of employment, any partial years of service shall be calculated as one week for every two complete months of service.  **In addition, any restrictive covenants contained in this Agreement shall be of no further force or effect**.

(emphasis added).

 Lomb, whose counsel is alleged to have  drafted the Contract, relies upon the last sentence of that paragraph to justify and support his defense that he is relieved of his obligations concerning the Company's Confidential Information and his duty to return confidential information upon his termination. Specifically, Lomb argues that certain restrictive covenants,

10

such as non-competition and non-solicitation, shall be of no further force or effect. Lomb also argues that his contractual duties and obligations regarding the Company's Confidential Information no longer apply to him. (ECF No. 22 at 7).

Both parties argue that the contract is enforceable, however, their argument lead to different results. Leaving aside the restrictive covenants of non-competition and non-solicitation, which have not been pleaded in this case, according to Plaintiff, it is not reasonable to argue that a terminated employee should be allowed to keep, and threaten to sell or auction, the trade secrets and Confidential Information of his former employer, which he obtained in violation of the contract, well in advance of his termination, and which he expressly agreed not to share. Indeed, this raises the possibility that the terms of the contract are ambiguous.  This issue has not been briefed by the parties as of yet.

As currently pled, Plaintiff's Complaint sets forth facts allege a valid claim for breach of contract by Lomb.  He is alleged to have failed to obtain consent from Brice Beaver to terminate the terminate the Names4ever contract, and further, is alleged to have failed to obtain consent to enter into a contract with GoDaddy, and as a result, currently owns and controls SSA's domain at GoDaddy, resulting in damages.  The contract provides that SSA holds exclusive ownership of Confidential Information, and expressly states a material term of the contract is Lomb's agreement to keep said information confidential.   At this stage of the proceedings, Plaintiff will be permitted to pursue the breach of contract claim, and Lomb will likewise be permitted to defend  his interpretation  and application of the contract through the summary judgment process.

Accordingly, the motion to dismiss will be denied with respect to Count IV.

### B.  Gist of Action:  Counts V, VI and VII

Defendants argue the conversion, breach of fiduciary duty and tortious interference claims at Counts V, VI and VII must be dismissed under the gist of the action and economic loss doctrines.  Because we find that Count V, which alleges conversion, must be dismissed on separate grounds, we need not address whether the gist of the action doctrine applies to that claim.

The "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other. *Smith v. Lincoln Benefit Life Co.,* No. 08-1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009), *aff'd*, 395 F. App'x. 821 (3d Cir. 2010). The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, "without any separate or independent event giving rise to the tort." *Smith*, 2009 WL 789900, at *20 (quoting *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co*., 256 F. Supp.2d 329, 340 (E.D. Pa. 2003)).

In *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.,* No. CV 19-3030, 2020 WL 2494701, at *10 (E.D. Pa. May 14, 2020) the court explained as follows.  Determining whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim." *Williams v. Hilton Grp., PLC*, 93 F. App'x 384, 386 (3d Cir. 2004); *see also Milo, LLC v. Procaccino,* No. 16-5759, 2020 WL 1853499, at *7 (E.D. Pa. 2020). "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not

12

controlling." *Bruno v. Erie*, 630 Pa. 79, 106 A.3d 48, 68 (2014). Rather, "[t]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" *Downs v. Andrews,* 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 68). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim should be treated as one for breach of contract." *Bruno*, 106 A.3d at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.*

A fair reading of the Complaint leads us to conclude that Counts VI and VII should not be dismissed on the basis of the gist of the action. The Court is mindful that this action is at the motion to dismiss stage and the Federal Rules of Civil Procedure authorize pleading in the alternative. Fed. R. Civ. P. 8(d)(2). For this reason, "[a] court should be cautious when determining that a claim should be dismissed under the gist of the action doctrine." *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co*., No. 09-236, 2009 WL 4572911, at *4 (W.D. Pa. Dec. 4, 2009). This is especially so where, as here,  the validity or enforceability of the contract appears to be at issue and central to the dispute.  *See, e.g., Premier Payments Online, Inc. v. Payment Systems Worldwide*, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012) ("When the validity, and if valid, the effect, of a contract is uncertain, courts have found the application of the gist of the action doctrine on a motion to dismiss to be inappropriate.").  As the Complaint alleges

sufficient facts with respect to a general societal duty, a legal duty outside the contract, the gist of the action does not apply. It is for this same reason that the economic loss doctrine also cannot be applied at this juncture. *See Dittman v. UPMC*, 196 A.3d 1036, 1056 (Pa. 2018) ("As this legal duty exists independently from any contractual obligations between the parties, the economic loss doctrine does not bar Employees' claim.").

### 1. Count VI (breach of fiduciary duty as to Defendant Lomb)

Count VI alleges breach of fiduciary duty as to defendant Lomb only.  The gist of the action doctrine bars a breach of fiduciary duty claim if there "are no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of the parties' contractual agreements." *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *8 (E.D. Pa. Jan. 29, 2015) (citation omitted). If the "fiduciary duty at issue goes 'beyond the particular obligations contained in' the parties' contract," the claim is not barred. *DePuy Synthes Sales*, 259 F. Supp. 3d at 238 (quoting *Bohler-Uddeholm, Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 105 (3d Cir. 2001).  In its response brief, Plaintiff argues that Lomb owed a duty which was an obligation not defined by the Employment Agreement, i.e.  an obligation "not defined by the terms of [an employment contract] but rather by larger social policies embodied in the law of torts." (Pl.'s Br. at 12) (citing *Bash v. Bell Telephone Co*., 601 A.2d 825 (Pa. Super. 1992)).

We find that, after viewing the facts as alleged in Plaintiff's favor, as well as case law applicable to similar situations, defendant's wrongful actions go beyond a simple violation of his obligations under the provisions of the Employment Agreement.  *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084, 2012 WL 628000, at *26 (E.D. Pa. Feb. 27, 2012)  (employee's duty of loyalty requires that an employee "refrain from competing with the [employer] and from taking action on behalf of, or otherwise assisting, the [employer's] competitors throughout the duration

of the agency relationship, as well as a duty not to use property or confidential information of the

[employer] for the [employee's] own purpose or those of a third party).   Because Lomb's duty

may arise from a broader social duty owed to all individuals, the gist of the action should not bar

SSA's breach of fiduciary duty claim.

Accordingly, Count VI will not be dismissed on the grounds of the gist of the action.

### 2.  Count VII:  Tortious Interference as to All Defendants.

Count VII alleges tortious interference with SSA's contracts and business relationships

as to all defendants.  The elements of tortious interference with a contractual relationship are:

> (1) [T]he existence of a contractual relationship between the complainant and a
> third party; (2) an intent on the part of the defendant to harm the plaintiff by
> interfering with that contractual relationship; (3) the absence of privilege or
> justification on the part of the defendant; and (4) the occasioning of actual
> damage as a result of defendant's conduct.

*Empire Trucking Col, Inc. v. Reading Anthracite Coal Co*., 71 A.3d 923, 933 (Pa. Super. 2013);

(Restatement (Second) of Torts § 766 (1979).  "To recover on a tortious intentional interference

with existing or prospective contractual relationships claim in Pennsylvania," SSA "must prove

that [Defendants were] not privileged or justified in interfering with its contracts...." *Acumed*

*LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009).

Defendants argue the terms of the contract prohibit the same activity which forms the

basis of their alleged tortious interference and that the gist of the action doctrine bars the tortious

interference claim.  "A tortious interference claim is barred by the gist of the action doctrine if it

is not independent of a contract claim that it pled along with it." *DePuy Synthes Sales, Inc. v.*

*Globus Med., Inc*., 259 F. Supp. 3d 225, 243 (E.D. Pa. 2017) (citation omitted).

Accepting as true all well-pled factual allegations in the complaint and viewing them in a

light most favorable to the Plaintiff, as we must, we find that it has adequately pled tortious

15

interference with contracts sufficient to state a claim.  Defendants' arguments that their actions were privileged or justified under the circumstances, i.e. the provisions of the contract are no longer enforceable because he was dismissed for cause, may be explored at the summary judgment phase of this case.   This line of inquiry, as well as any resultant damages, merit further exploration through the discovery process, and Plaintiff will be permitted to pursue this claim as an alternate basis of recovery.

Accordingly, Count VII will not be dismissed on the grounds of gist of the action.

### C. Count V:  Conversion (as to all Defendants)

Pennsylvania courts continue to hold that only tangible property, or intangible property rights which have merged with, or are otherwise connected to, a document, are subject to conversion. *See Northcraft v. Edward C. Michener Assoc.*, 319 Pa.Super. 432, 466 A.2d 620, 625 (Pa. Super. 1983) ("The process of expansion [of the tort of conversion] has stopped with the kind of intangible rights which are customarily merged in, or identified with some document."). As alleged, SSA has failed to state a claim for conversion under Pennsylvania law, and Count V will be dismissed. *Famology.com, Inc. v. Perot Sys. Corp.,* 158 F.Supp.2d 589, 591 (E.D. Pa. 2001) (holding that conversion action could not be brought under Pennsylvania law for misappropriation of internet domain names because such domain names do not constitute tangible property); *Peruto v. Roc Nation*, 386 F.Supp.3d 471, 475 (E.D. Pa. 2019).

Accordingly, Count V will be dismissed for failure to state a claim.

### D.  Count VIII:  Unjust Enrichment (alleged as to all Defendants)

Count VIII alleges unjust enrichment as to all defendants.  Plaintiff avers that as a result of their conduct, namely Lomb's refusal to return SSA's domain and other confidential information and the intention by all defendants to negotiate with SSA's competitors using

16

information wrongfully obtained, for which SSA was not compensated, it  has sustained actual damages and irreparable injury. "The equitable doctrine of unjust enrichment sounds in quasi-contract – a contract implied in law." *Integrated Waste Sols., Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at \*15 (E.D. Pa. Nov. 30, 2010) (*citing Sevast v. Kakouras*, 915 A.2d 1147, 1153 n. 7 (Pa. 2007)).  Again, because we must view the facts as alleged in light most favorable to SSA, and  the enforceability of the provisions of the Employment Agreement remain at issue, Plaintiff should be permitted to plead as an alternative to the breach of contract claim that defendants were unjustly enriched.

Accordingly, Count VIII will not be dismissed.

## C.  Count III:  Conspiracy (alleged as to all Defendants)

Lomb argues the claim of conspiracy must be dismissed for failure to state a claim because SSA has not and cannot plead  the required element of malice, such that this element would be consistent with the stated allegation that Defendants acted for their own financial benefit.  Lomb also argues the conspiracy claim lacks the element of lack of privilege/justification and pecuniary loss.   At this stage of the proceedings, we find that SSA has adequately plead a claim of conspiracy sufficient to state a claim for relief that is plausible on its face and resultant damages. Defendants threatened to sell trade secrets and confidential information to competitors and/or highest bidders, writing in an email "this isn't our first rodeo and I'm not wasting anyone's time with flowery language . . . short of you providing a document or Mr. Lomb telling us to  stop, once we finish our internal vetting and give him the all clear, we will work with Mr. Lomb to setup the auction at his direction." (Compl. Ex. 3).  This, when read in conjunction with the other allegations in the Complaint, meets the required elements of civil conspiracy, which is to say, that two or more persons combined or agreed with intent to do an

17

unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198 (1978).

Accordingly, Count III will not be dismissed.

**D.  Count VII:  Tortious interference**

Lomb argues the claim of intentional interference with contractual relations fails to state a claim in two respects, namely, SSA has failed to allege 1) Lomb's actions were not privileged or justified; and 2) that SSA has sustained actual damages.  The elements for tortious interference were previously addressed, *supra*.   Again, we find that SSA has pleaded sufficient facts to support its claim, and therefore, it will be permitted to proceed to discovery on this claim.  Plaintiff alleges Defendants possess virtually all of its trade secrets, including contract information for thousands of SSA's customers, and have threatened to sell such information to its competitors and/or auction SSA's customer lists to the highest bidder. Defendants are alleged to have made arrangements to sell SSA's Confidential information to four competitors, boasting "everyone clearly knows that this will alter regional competition somewhere; it is like they smell blood in the water." ( Compl. ¶¶ 63-65). To the extent that Defendants argue privilege or justification, or lack of actual damage as a result of defendants' conduct, the allegations in the Complaint adequately address these elements, sufficient to allow the case to proceed to discovery.

Accordingly Count VII will not be dismissed.

**E.  Count VIII:  Unjust Enrichment (alleged as to all Defendants)**

At Count VIII, Plaintiff pleads an unjust enrichment claim.   Lomb argues this claim must be dismissed because SSA and Lomb both agree that the Employment Agreement is binding and enforceable on the parties.

18

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to do so without paying for the benefit. *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. 2019).  In Pennsylvania, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006).  Even where a contract would preclude recovery under unjust enrichment, a plaintiff may plead a claim for unjust enrichment in the alternative where "(i) the contract at issue covers only a part of the relationship between the parties, or [where] (ii) the existence of a contract is uncertain or its validity is disputed by the parties."  *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (footnotes omitted) (citations omitted).

As alleged, five months before he was fired, Lomb stole and converted for his own use the domain of SSA, without the knowledge of SSA's officers. Indeed, Lomb has refused, and continues to refuse to this day, to return to SSA the domain that took from the Company.  Even if, under his interpretation of the Employment Agreement, he was allowed to do this once he was terminated, under the doctrine of unjust enrichment, Plaintiff can argue he accepted and retained the benefit under circumstances in which it would be inequitable to do so without paying for the benefit.

Accordingly, Count VIII will not be dismissed.

**F.  Leave to Amend**

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.,*

935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).  After a careful review of the claims set forth in the Complaint, we find that amendment of the conversion claim would be futile.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss is granted in part and denied in part.

An appropriate Order of Court will follow.


Dated:  September 30, 2020                              s/ *Robert J. Colville*
                                                       Robert J. Colville
                                                       United States District Judge


cc: All counsel of record via CM-ECF